UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00222-H

BOB KORB, PLAINTIFF

V.

VOITH INDUSTRIAL SERVICES, INC.,
DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bob Korb brought this case against his former employer, Defendant Voith Industrial Services, Inc. ("Voith"), alleging that Voith's policy prohibiting the possession of firearms is in violation of Kentucky law, and that Korb's termination as a result of this policy likewise violated his protected rights under Kentucky law. Voith now moves to dismiss the Complaint on *res judiciata* grounds, or in the alternative for summary judgment because no genuine issue of material fact exists to undermine Voith's entitlement to judgment as a matter of law.

This case arises from unusual circumstances. Plaintiff suffered consequences which many could reasonably view as excessive. Of course, the Court's role does not extend to determining the reasonableness of Defendant's actions, but only whether they were within legal bounds. For the reasons that follow, the Court sustains Voith's motion for summary judgment.

I.

Voith is an Ohio corporation that provides support services to automobile manufacturing companies throughout the United States. Ford Motor Company ("Ford") employs Voith to perform its industrial cleaning services at the Ford Louisville Assembly Plant ("LAP"). Korb was a Voith employee working in the paint department at the LAP. As a Voith employee at a Ford plant, Korb

was a member of the United Automobile, Aerospace and Agriculture Implementation Workers of America, Local Union 862 ("UAW").

Voith maintained a prohibition against the possession of weapons on company property in its Employee Handbook, and the general safety rules for the LAP expressly stated that possession of firearms and weapons are prohibited on company property, including parking lots. As extra precaution, Ford posted notices throughout its parking lot to remind employees that weapons are not permitted on the property.

On July 21, 2011, Korb was tending to the trash cans in the parking lot. Because Korb's employee pass would not allow for reentry to the plant buildings, a security officer working at the LAP accompanied Korb while he performed this duty. On his way to retrieve a pack of cigarettes from his vehicle, Korb asked the security officer whether he wanted to see the "sweet deal" Korb received for $150. The security officer assented, following Korb to his car. Korb then pointed out a handgun resting between the driver's seat and the center console. The security officer questioned Korb as to whether this was a real gun, and Korb removed the handgun from its holster, ejected the clip, and revealed to the security officer that the weapon was indeed a loaded 45 caliber handgun.

The security officer told Korb that he wished Korb had not shown him this and reported the incident to his supervisor. Korb provided a written statement and gave an interview with Voith's facility manager asserting his side of the story. He acknowledged the foregoing sequence of events. Based on an internal investigation, Voith decided to terminate Korb. Korb filed a union grievance, and the UAW requested reinstatement. Voith upheld its decision.

As a consequence and pursuant to the UAW collective bargaining agreement, the issue was submitted to binding and final arbitration. The UAW, acting on behalf of Korb at the arbitration,

argued that KRS § 237.106, which protects people from adverse employment action for the non-concealed possession of weapons in a vehicle on the employer's property, served as a defense for Korb's actions. By virtue of this public policy protection, the UAW argued for the reinstatement of Korb to his former position with back pay and no interruption in seniority. The arbitrator concluded that Korb committed a fireable offense that is not protected under Kentucky law.

Subsequently, Korb filed a lawsuit in Kentucky state court, which was removed to this Court on diversity grounds. Voith now moves for summary judgment pursuant to Fed. R. Civ. P. 56,[1] which is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Considering the evidence in a light most favorable to the non-moving party, the Court will enter summary judgment where "there is not sufficient evidence in support of the non-movant's case upon which 'a reasonable jury could return a verdict for the nonmoving party.'" *Dodd v. Dyke Indus., Inc.*, 518 F.Supp. 2d 970, 972 (W.D. Ky. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

II.

KRS § 237.106(a) states that "[n]o . . . employer . . . shall prohibit any person who is legally entitled to possess a firearm from possessing a firearm . . . in a vehicle on the property." Korb argues that Voith violated this provision of Kentucky law when it fired Korb for violating company policies that prohibited possession of weapons while at work. Before the arbitrator, the UAW, representing Korb, asserted this same argument and contended that enforcing Voith's policy would effectively place a private corporation's internal policies above the law.

---

[1] Having considered the motion in its entirety, the Court concludes that the Defendant's motion is most clearly disposed of through Fed. R. Civ. P. 56. However, the Court does not weigh on the merits of the motion to dismiss on *res judicata* grounds.

3

The arbitrator defined the essential issue in the case as "whether under the facts of this case the Kentucky Statute provides a recognizable affirmative defense for Mr. Korb to the charge that on July 21, 2011, he violated the rule of the Company which prohibits weapons on company property, including parking lots." The arbitrator certainly asked the correct question. On its face, enforcement of Voith's policy could conflict with the statutory rights guaranteed by KRS § 237.106. However, in the present case, Korb's actions involved more than mere possession of a handgun. *Cf. Mitchell v. Univ. of Ky.*, 366 S.W.3d 895 (Ky. 2012) (holding that the employee's discharge was contrary to KRS § 237.106 where the employee simply kept a firearm in the glove compartment of his vehicle). Therefore, had Korb merely stored the gun in his vehicle, the statute would have protected his actions.

Korb does not dispute that he in fact handled the gun.[2] He admits to removing the gun from its holster, ejecting the clip, and revealing the ammunition. KRS § 237.106(3) only permits the handling of a firearm "in the case of self-defense, defense of another, defense of property, or as authorized by the owner, lessee, or occupant of the property." *Id.* An employer is prohibited from taking adverse employment action only under these limited circumstances, and Korb cannot prove that he handled the gun for any of these purposes. Indeed, Korb admitted in his statement of the incident and during his interview with Voith supervisors that he handled to gun to show the security officer the great deal he landed in purchasing the firearm, decidedly not one of the permissible purposes under KRS § 237.106.

Korb does argue that he received authorization from "the owner, lessee or occupant of the property" when the security officer, a purported agent of an entity entitled to grant authorization,

---

[2]Korb does dispute whether he removed the gun from the vehicle, or rather simply handled the gun while it was still within the bounds of his car, but this argument is inapposite. The statute specifically provides for situations wherein the actor removes the gun from the vehicle *or* handles the gun, and Korb clearly handled the gun.

encouraged Korb to remove the gun from his holster, but the evidence, as described by Korb in his various statements on the incident, demonstrates otherwise. According to Korb's story, the security officer followed Korb to his car to bear witness to whatever deal Korb was boasting about to him.

No evidence suggests that the security officer knew the "sweet deal" pertained to a gun. When the security officer saw that the "sweet deal" appeared to be a firearm, he asked whether it was a BB gun. This question is not tantamount to encouragement to handle the gun. Korb removed the gun and ejected the clip upon his own impetus to prove to the security officer that the gun was a 45 caliber handgun. Moreover, it is undisputed that the security officer told Korb that he wished Korb had not shown him the gun, supporting the conclusion that the security officer did not authorize Korb's handling of the gun. Therefore, no reasonable jury could find that the security officer's statements authorized Korb to handle the gun or remove it from his vehicle.

In sum, while Kentucky law certainly protects Korb's right to possess the handgun in his vehicle at work, this protection does not extend to the handling of the firearm. Although the punishment for Korb's indiscretion was perhaps severe, Voith has the discretion to terminate an employee who violates company policies in such a way that does not run contrary to state or federal statutory or constitutional law. Korb has failed to establish that a genuine issue of material fact that remains as to the statutory violation.[3] Therefore, Voith is entitled to judgment as a matter of law.

Being otherwise sufficiently advised,

---

[3] Korb argues that because Voith initially said that Korb was terminated for possessing firearms, and then shifted the reason to Korb's handling and removal of the firearm from his vehicle, a genuine issue of material fact exists as to why Voith fired Korb. However, the arbitrator upheld Voith's decision to terminate, based upon Korb having committed a dischargeable offense for which he was not protected under Kentucky law. This is also ultimately the reason why Korb was fired. Thus, the arbitrator's decision conclusively establishes that Voith fired Korb for actions which violated a company policy and which were not protected under Kentucky law.

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED and the Complaint is DISMISSED WITH PREJUDICE.

This is a final order.

cc:     Counsel of Record